**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| HUEY RANKIN, ET AL. | CIVIL ACTION NO. 03-448 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| CITY OF MANSFIELD | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is Plaintiffs Huey Rankin ("Rankin") and Israel Purvis' ("Purvis") (collectively "Plaintiffs") Motion to Enforce Consent Decree (Record Document 48). Plaintiffs seek a court order that Defendant the City of Mansfield ("the City") must comply with its obligations under the Court's August, 26, 2004, Partial Consent Judgment (the "consent judgment") (Record Document 27). For the reasons stated in the instant Memorandum Ruling, a final ruling on Plaintiffs' Motion to Enforce Consent Decree is hereby **DEFERRED** until after a hearing on the City's grounds for equitable modification of the consent decree is held.

**FACTUAL AND PROCEDURAL BACKGROUND**

On March 10, 2003, Plaintiffs filed the instant action seeking declaratory and injunctive relief against the City and two private parties owning land and operating businesses in Mansfield. See Record Document 1. Plaintiffs sought a declaration that several specific sidewalks within Mansfield did not comply with the requirements of the Americans with Disabilities Act ("ADA") and various other related federal and state statutes. See id. Plaintiffs eventually voluntarily dismissed all claims against both of the private parties. See Record Documents 24 and 28.

On August 26, 2004, Plaintiffs and the City entered into the consent judgment that is the subject of the instant Motion. See Record Document 27. The consent judgment

provides that the City shall: (1) install ADA-compliant curb ramps and accessible pathways on new sidewalks and altered sidewalks in Mansfield; (2) maintain all existing and future sidewalks, curb ramps, and pathways as ADA-compliant; (3) complete all work necessary to make certain existing sidewalks, curb ramps, and pathways in Mansfield ADA-compliant by set deadlines; (4) ensure that all future contracts for construction or alteration of streets, sidewalks, curb ramps, and pathways contain specific requirements to make them ADA-compliant; (5) provide to Plaintiffs' counsel both a list of all sidewalks and places where pedestrian walks cross curbs in areas in Mansfield that contain state or local government offices or businesses serving the public generally, and a schedule for bringing those sidewalks that are not yet ADA-compliant into compliance; and (6) pay $2,500 in attorney's fees to Plaintiffs. See id. The consent judgment specifically defines the term "ADA-compliant" as used in the consent judgment as follows:

> Compliant with the requirements of Title II of the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., and 28 C.F.R. Part 36, App. A. When referring to a curb ramp, these requirements include, but are not limited to, 28 C.F.R. Part 36, App. A §§4.7 and 4.8. When referring to a sidewalk or pathway, these requirements include, but are not limited to, 28 C.F.R. Part 36, App. A §§4.3 and 4.5.

Id. at ¶ 12.

As required by the consent judgment, within 180 days of the signing of the consent judgment the City provided Plaintiffs' counsel with both (1) a list of all relevant sidewalks in Mansfield and (2) a schedule for bringing all non-compliant sidewalks into ADA-compliance (the "compliance schedule"). See Record Documents 48-1 (the list of relevant sidewalks in Mansfield, both ADA-compliant and non-compliant) and 48-2 (the compliance schedule). The compliance schedule contains specific work for the City to perform each year on particular city sidewalks that the City identified in the compliance

schedule as not yet ADA-compliant, with the last work contained in the compliance schedule to be performed in 2025. See Record Document 48-2. For example, in 2017, one requirement that the City must meet under the compliance schedule is to "perform sidewalk and ramping work on both sides of Polk Street from Railroad Tracks to Lake Road to bring area into full compliance with the ADA." Id. at 2. Under the consent judgment, the City "shall provide such sidewalks and curb ramps according to such schedule." Record Document 27 at ¶ 11.

The Court had no more involvement with the instant action until August 5, 2010, when Plaintiffs filed a Motion for Civil Contempt. See Record Document 31. In that Motion, Plaintiffs sought a declaration that the City was in contempt of the consent judgment and an order requiring the City to take action to bring itself into compliance with the consent judgment. See id. The parties eventually worked out an agreement on this Motion, and provided a Joint Status Report to the Court on February 15, 2011. See Record Document 43. The Court administratively terminated this Motion on March 3, 2011. See Record Document 44. Plaintiffs filed the instant Motion to Enforce Consent Decree on December 14, 2016, and the Motion is fully briefed. See Record Documents 48, 52, and 55.

**LAW AND ANALYSIS**

**I.   Legal Standards**

   **A. Overview of the ADA**

The ADA is the product of "decades of deliberation and investigation into the need for comprehensive legislation to address discrimination against persons with disabilities." Tennessee v. Lane, 541 U.S. 509, 516 (2004). "The ADA is designed to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." Id., quoting 42 U.S.C. § 12101(b)(4). Title II of the ADA

"prohibits any public entity from discriminating against 'qualified' persons with disabilities in the provision or operation of public services, programs, or activities." Id. at 517. Local government entities like cities are included within the ADA's definition of a "public entity." 42 U.S.C. § 12131(1).

The ADA also granted the Department of Justice ("DOJ") the authority to promulgate regulations to implement the ADA. See 42 U.S.C. § 12134 (specifically granting such authority with respect to Title II of the ADA). For Title II of the ADA, these regulations are found at 28 C.F.R. § 35.101, *et. seq.* Under 28 C.F.R. § 35.151(a) and (b), "each facility or part of a facility" that is either "constructed" or "altered" by a public entity after January 26, 1992, must be "readily accessible to and usable by individuals with disabilities." The term "facility" includes all "walks" and "passageways." 28 C.F.R. § 35.104.

Under 28 C.F.R. § 35.151(c), public entities are required to construct newly-built or altered facilities using the specifications provided in one of several different versions of ADA guidelines. The date on which the physical construction or alteration of the facility commences determines the version of the guidelines with which the construction or alteration of the facility must comply. See 28 C.F.R. § 35.151(c). The United States Access Board (the "Access Board") first published the ADA Accessibility Guidelines ("ADAAG") in 1991, guidelines that the DOJ adopted as binding regulations and originally published as Appendix A to 28 C.F.R. Part 36. On July 23, 2004, the Access Board published a new version of the ADAAG, which was codified at 36 C.F.R. 1191, app. B and D (2009). See 28 C.F.R. Part 36, app. A (explaining some of the history of the ADA's accompanying regulations). On September 15, 2010, the DOJ adopted the 2004 ADAAG

as binding regulations and added some additional requirements, those found in subpart D of 28 C.F.R. Part 36, §§ 36.401-406. See id. In promulgating the 2010 ADAAG, the DOJ also moved the 1991 ADAAG from its former location at 28 C.F.R. Part 36, app. A, to 28 C.F.R. Part 36, app. D. See id.

Under this complex scheme, if the physical construction or alteration of the facility commenced after July 26, 1992, but prior to September 15, 2010, the construction or alteration had to conform to the 1991 ADAAG's specifications. See 28 C.F.R. § 35.151(c)(1).[1] If it commenced after September 15, 2010, but before March 15, 2012, it had to conform to either the specifications of the 1991 ADAAG or the 2010 ADAAG. See 28 C.F.R. § 35.151(c)(2). For all construction or alteration of facilities after March 15, 2012, such construction or alteration must conform to the 2010 ADAAG. See 28 C.F.R. § 151(c)(3).

### B. Consent Judgments

Consent judgments are both enforceable judicial orders and contracts that must be interpreted as such. See United States v. Chromalloy Am. Corp., 158 F.3d 345, 349 (5th Cir. 1998) ("general principles of contract interpretation govern the interpretation of a consent decree"). Interpretation of consent judgments, like contracts, begins with the "four corners of the order itself." Id. at 350; see also La. C.C. art. 2046. When a contract specifically defines a term, courts must interpret that term as defined in the contract. See In re Katrina Canal Breaches Consol. Litig. v. Encompass Ins. Co., 466 F. Supp. 2d 729

---

[1] Under 28 C.F.R. § 35.151(c)(1), construction or alteration of facilities from 1992 to 2010 could also comply with the DOJ's regulations by conforming to a separate set of guidelines produced by the Access Board, the Uniform Federal Accessibility Standards ("UFAS"). However, because the consent judgment's definition of "ADA-compliant" refers solely to the ADAAG, the UFAS is not relevant to the instant action.

(E.D. La. 2006) (extensively discussing insurance policies that specifically defined policy exclusions and the consequences of these different definitions for whether certain damage was covered), aff'd in part by In re Katrina Canal Breaches Litig., 495 F. 3d 191 (5th Cir. 2007). "When a contract is expressed in unambiguous language, its terms will be given their plain meaning and enforced as written." Chromalloy Am. Corp., 158 F.3d at 349; see also La. C.C. art. 2046 ("when the words of a contract are clear and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent"). "A contract provision is not ambiguous where only one of two competing interpretations is reasonable." Tex. E. Transmission Corp. v. Amerada Hess Corp., 145 F.3d 737, 741 (5th Cir. 1998); see also In re Liljeberg Enters., 304 F.3d 410, 439-40 (5th Cir. 2002) ("under Louisiana law, a contract is ambiguous when it is uncertain as to the parties' intentions and susceptible to more than one reasonable meaning").

Though a consent judgment must be interpreted as a contract, it is nonetheless "a judicial decree that is subject to the rules generally applicable to other judgments and decrees." Frew v. Hawkins, 540 U.S. 431, 437 (2004). A federal court retains inherent equitable power to modify its own decrees, including consent judgments. See LULAC v. City of Boerne, 659 F.3d 421, 436 (5th Cir. 2011). Federal Rule of Civil Procedure 60(b)(5) allows a party subject to a court order or judgment to seek relief from the order or judgment on the ground that "applying [the order or judgment] prospectively is no longer equitable." This Rule "encompasses the traditional power of a court of equity to modify its decree in light of changed circumstances." Frew, 540 U.S. at 441. "A party seeking modification of a consent decree must establish that a significant change in facts or law warrants revision of the decree and that the proposed modification is suitably tailored to

the changed circumstance." Rufo v. Inmates of Suffolk Co. Jail, 502 U.S. 367, 393 (1992). One factor that may be "appropriately considered in tailoring a consent decree modification" is the fact that compliance with the decree in its current form imposes significant "financial constraints" on a government actor subject to the decree. See id. at 392-93. Another factor that may be considered is whether the party seeking equitable modification has acted in good faith thus far, particularly whether it can show substantial compliance with the consent decree up to the point at which equitable modification is requested. See Small v. Hunt, 98 F.3d 789, 796 (4th Cir. 1996) (affirming district court's equitable modification of a consent decree requiring a state to improve prison conditions when the state had engaged in "very diligent, good faith efforts to comply fully with the consent decree").

### C. Civil Contempt

"In a civil contempt proceeding, the movant must establish by clear and convincing evidence that (1) a court order was in effect, (2) the order required specified conduct by the respondent, and (3) the respondent failed to comply with the court's order." United States v. City of Jackson, 359 F.3d 727, 731 (5th Cir. 2004). "The contemptuous actions need not be willful so long as the contemnor actually failed to comply with the court's order." Am. Airlines, Inc. v. Allied Pilots Ass'n, 228 F.3d 574, 581 (5th Cir. 2000).

## II. Analysis

Plaintiffs argue that the consent judgment requires the City to improve all of the sidewalks, curb ramps, and pathways listed in the compliance schedule in accordance with the ADAAG, and that the City is in contempt of the consent judgment because it has failed to do so. See Record Document 48. Under the City's interpretation of the consent

judgment, the City is only required to "comply with the requirements of the ADA," which means that only sidewalks built or altered after 1992 are required to conform to the ADAAG's specifications. Record Document 52 at 7. Thus, the City argues that it is not required to comply with what it calls the "technical guidelines" in the ADAAG because Plaintiffs have failed to show that the sidewalks in question were built or altered after the ADA took effect in 1992. See id. at 7. The City cites to Frame v. City of Arlington, 657 F.3d 215 (5th Cir. 2011), to support this argument. See id. at 7-10.

Alternatively, the City asks the Court to equitably vacate or modify the consent judgment to relieve the City of at least some of the burdens of complying with the consent judgment's requirements if the Court agrees with Plaintiffs' interpretation of its requirements. See id. at 10-13. In response to the City's arguments, Plaintiffs argue that the City is now "attempt[ing] to re-litigate the underlying facts of the original case rather than address the question of whether it complied with the terms of the consent judgment," and that there are no grounds for equitably vacating or altering the consent judgment. Record Document 55 at 5.

### A. Frame Is Distinguishable From the Instant Action

The City primarily bases its argument on quotes from Frame. See Record Document 52 at 6-10. In Frame, the Fifth Circuit addressed two issues: (1) whether Title II of the ADA and its private cause of action against municipalities for enforcement of its provisions and those in the ADAAG extends to public sidewalks that are either newly built or altered after the ADA took effect in 1992; and (2) when the private cause of action for enforcement of these provisions accrues. See Frame, 657 F.3d at 221. The Court held that: (1) the ADA's private cause of action extends to sidewalks that are newly built or

altered after 1992; and (2) this private cause of action accrues when a plaintiff first knows or should know that he or she is being deprived of the benefit of ADA-compliant sidewalks. See id.

In discussing the ADA's requirements, the Court stated that the ADA does not require cities to "employ any and all means" to make its sidewalks accessible. Id. at 231. Rather, Title II of the ADA imposes upon cities a "reasonable modification requirement" to make both its new sidewalks and altered sidewalks "readily accessible" to disabled persons. Id. The court described this requirement as follows:

> [A] public entity is not required to undertake measures that would impose an undue financial or administrative burden, threaten historic preservation interests, or affect a fundamental alteration in the nature of the service. Thus, DOJ's regulations do not require cities to achieve accessibility at any cost. Instead the regulations require only that when a city chooses to construct a new sidewalk or alter an existing one, the city must take reasonable measures to ensure that those sidewalks are readily accessible to individuals with disabilities.

Id. at 232 (internal citations and quotations omitted).

The City argues that these statements mean that it is not in contempt of court or noncompliance with the consent judgment. See Record Document 52 at 6-10. Again, it argues that the consent judgment only requires the City to "comply with the requirements of the ADA," and that the ADA, as interpreted in Frame, does not require the City to "reconstruct existing sidewalks to comply with the very technical requirements" contained in the ADAAG. Id. at 7. Thus, according to the City, Plaintiffs must first prove that all of the sidewalks at issue were either built or altered after 1992 before the City can be found noncompliant with the ADA, as the ADA and ADAAG's requirements only apply to sidewalks built or altered after 1992. See id.

The Court agrees with Plaintiffs. Frame contains a useful discussion of the background of the ADA and the important holding that plaintiffs have a private cause of action against municipalities to enforce the ADAAG's requirements for altered and newly built sidewalks; however, it does not address facts similar to those in the instant action. 657 F.3d at 225-35. The City's analysis of Frame ignores a major factual difference between that case and the instant action: Frame did not involve a consent judgment voluntarily entered into by a city and disabled plaintiffs. Id. Rather, it involved interpretation of the ADA and its requirements generally, without an agreement in which the parties affirmatively and voluntarily assumed certain duties. See id. Thus, Frame does not address the particular matters at issue in the instant action because here, there is a consent judgment that (1) requires the City to make certain parts of its infrastructure "ADA-compliant" and (2) specifically defines what the term "ADA-compliant" means. See Record Document 27 at ¶ 12.

### B. The Consent Judgment Sets Forth the Obligations of the Parties, and It Unambiguously Requires the City to Perform the Work in the Compliance Schedule Under the ADAAG's Specifications.

Plaintiffs correctly point out that once the parties to an action enter into a consent judgment, that judgment "embodies an agreement of the parties," and that the Court must interpret the consent judgment as it would interpret any other contract. See Record Document 55 at 2, quoting Rufo, 502 U.S. at 378. In the instant action, the parties dispute whether the City is required to perform all of the actions listed in the compliance schedule under the standards set forth in the ADA and ADAAG; thus, because the consent judgment specifically defines the term "ADA-compliant," the dispute centers on the

interpretation of this definition. See Record Document 27. As stated in the Factual Background Section, *supra*, the consent judgment defines "ADA-compliant" as follows:

> Compliant with the requirements of Title II of the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., and 28 C.F.R. Part 36, App. A. When referring to a curb ramp, these requirements include, but are not limited to, 28 C.F.R. Part 36, App. A §§4.7 and 4.8. When referring to a sidewalk or pathway, these requirements include, but are not limited to, 28 C.F.R. Part 36, App. A §§4.3 and 4.5.

Id. at ¶ 12. In 2004, when the parties entered into the consent decree, the reference to "28 C.F.R. Part 36, App. A" was a reference to the 1991 ADAAG, which was moved to 28 C.F.R. Part 36, app. D after the 2010 version of the ADAAG was promulgated. See Section I, A, *supra*; see 28 C.F.R. Part 36, app. A.

Again, the City interprets this definition to require it to do nothing more than it would be required to do absent a consent decree, i.e., "comply with the requirements of the ADA." Record Document 52 at 7. Thus, under this argument, the City would only have to comply with the ADA and ADAAG when it builds new sidewalks or alters existing sidewalks, and would have no obligation to make pre-1992 sidewalks ADA-compliant. See id. at 6-10. It would also require Plaintiffs to prove that each sidewalk that they claim is not ADA-compliant under the consent judgment and compliance schedule was either built or altered after 1992 before they could have a valid claim that the City has violated the consent judgment. See id.

The Court finds that the consent judgment's definition of "ADA-compliant" unambiguously supports Plaintiffs' argument that the consent judgment requires the City to perform all of the work set forth in the compliance schedule in accordance with the ADA and ADAAG's provisions. The City's argument might be correct if the consent judgment's definition of "ADA-compliant" were limited to its first sentence, as that sentence merely

defines this term as "compliance with *the requirements of*" the ADA and ADAAG. Record Document 27 at ¶ 12 (emphasis added). That sentence, taken alone, might reasonably be interpreted as requiring the City to merely meet its normal ADA obligations, i.e., ensure that all post-1992 sidewalk construction and alteration is compliant with the ADAAG.

However, there are two reasons why the City's interpretation of the consent judgment is unreasonable. First, there are two additional sentences in the consent judgment's definition of "ADA-compliant." See id. Both of these sentences further define what the term "ADA-compliant" means when applied to particular infrastructure items. See id. The consent judgment specifically defines "ADA-compliant," as applied to a "curb ramp," to require compliance with §§ 4.7 and 4.8 of the ADAAG. See id. The consent judgment also specifically defines "ADA-compliant" as applied to "a sidewalk or pathway," to require compliance with §§ 4.3 and 4.5 of the ADAAG. See id. These sections of the ADAAG set forth very detailed specifications for such curb ramps, sidewalks, and pathways. For example, the 1991 ADAAG required all accessible routes (i.e., sidewalks or pathways) to be at least 36 inches wide. See 28 C.F.R. Part 36, app. D § 4.3.3. Thus, the consent judgment not only adopts the ADAAG generally as part of the first sentence of its definition of "ADA-compliant," but it also specifically cites certain sections of the ADAAG in defining what "ADA-compliant" means with respect to certain infrastructure items. See id.

Second, the consent judgment unambiguously required the City to provide Plaintiffs with the following: (1) a list of "all sidewalks and places where pedestrian walks cross curbs in areas within [the City] that contain state or local government offices and facilities, or businesses serving the public generally, and a determination for each as to

whether there is an ADA-compliant sidewalk and an ADA-compliant curb ramp at the intersection of the curb and the pedestrian walkway;" and (2) a compliance schedule in which the City agreed to render all the non-ADA-compliant sidewalks on the list ADA-compliant by certain dates. Record Document 27 at ¶¶ 10-11. Within 180 days of the signing of the consent judgment, the City provided such a list and compliance schedule. See Record Documents 48-1 and 48-2.

Reading the consent judgment, its definition of "ADA-compliant," the list of compliant and non-compliant sidewalks, and the compliance schedule together, only the Plaintiffs' interpretation of the City's duties under the consent judgment is reasonable. See La. C.C. art. 2050 ("each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole"). Without the consent judgment, the City is correct that to meet its ADA obligations, it would only be required to comply with the ADAAG with respect to sidewalks that are either newly-built or altered after 1992. See Frame, 657 F.3d at 231-232. However, the consent judgment and compliance schedule unambiguously require the City to make the sidewalks, curbs, and walkways listed in the compliance schedule "ADA-compliant" by the stated deadlines. See Record Documents 27 and 48-2. The City's interpretation of the consent judgment is unreasonable because it would render both the last two sentences of the definition of "ADA-compliant" and the compliance schedule–in which the City identified sidewalks that the City itself admits are not "ADA-compliant" and sets forth a schedule for making them "ADA-compliant"–essentially meaningless. See id.

The Court finds that by entering into the consent judgment, the City voluntarily assumed the obligation to render all the sidewalks listed in the compliance schedule

"ADA-compliant" as defined in the consent judgment, a definition that includes compliance with the ADAAG. The City entered this agreement even though some of the sidewalks listed in the compliance schedule may have existed prior to 1992 and may not have been altered since 1992, meaning that the City would not normally be required to make them ADA-compliant unless it decided to make alterations to them on its own initiative. The only reasonable conclusion to be drawn regarding the parties' intent from reading the consent judgment, its definition of "ADA-compliant," the list of compliant and non-compliant sidewalks, and the compliance schedule together is that the parties intended for the consent judgment to require the City to comply with the ADAAG in performing the work listed in the compliance schedule. The Court must interpret the unambiguous language in these documents as written and reject the City's interpretation.

### C. The City Has Provided Sufficient Evidence to Raise the Issue of Equitable Modification of the Consent Judgment, But More Evidence Is Needed to Equitably Modify the Consent Judgment.

Because the Court's interpretation aligns with that of Plaintiffs, the next step in the analysis of the instant Motion would ordinarily be to analyze whether Plaintiffs' evidence establishes by clear and convincing evidence that the City is not in compliance with the consent judgment. See City of Jackson, 359 F.3d at 731 (setting forth the elements a party must show by clear and convincing evidence to demonstrate that another party is in contempt of a consent judgment). Based on the Court's preliminary review of the Plaintiffs' evidence, which consists of photographs of many sidewalks and curb ramps in Mansfield that are listed in the compliance schedule, the Court assumes without deciding that Plaintiffs could meet this burden with respect to at least some of the requirements of the consent judgment. See Record Document 48-4 (Plaintiffs' photographs). However, as

an alternative argument, the City asks the Court to equitably vacate or modify the consent judgment to relieve the City of at least some of the burdens of complying with the consent judgment's requirements if the Court agrees with Plaintiffs' interpretation of its requirements. See Record Document 52 at 10-13. In response, Plaintiffs argue that there are no grounds for equitably vacating or altering the consent judgment. See Record Document 55 at 5. Thus, the Court will address the equitable modification argument before deciding whether the City has failed to comply with the requirements of the consent judgment.

In support of its request for equitable modification of the consent judgment, the City cites to the three exhibits it attached to its Response to the instant Motion. See Record Document 52 at 10-13. These exhibits are as follows: (1) an affidavit by James W. Ruffin ("Ruffin"), the Public Works Director for the City from January 14, 1991 to the present; (2) a series of photographs taken on January 25, 2017, which show several sidewalks and curb ramps in Mansfield; and (3) an affidavit by Curtis W. McCoy ("McCoy"), the Mayor of Mansfield from July 1, 2002 to the present. See Record Documents 52-1 (Ruffin's affidavit and the photographs) and 52-2 (McCoy's affidavit). Citing to these exhibits, the City argues that "the clear goal of the Consent Judgment was to require the City to comply with the requirements of the ADA," and that "the undue hardship of enforcing the Consent Judgment on the City in some other manner would be adverse to the City's functioning and its population as a whole." Record Document 52 at 12. The City further argues that the Court should therefore equitably modify the consent judgment to simply require the City to comply with the general requirements imposed by

the ADA absent the consent judgment to "protect the recognized social balance between the goals of accessibility and financial burden." Id.

For a Court to equitably modify a consent judgment, the party seeking modification "must establish that a significant change in facts or law warrants revision of the decree and that the proposed modification is suitably tailored to the changed circumstance." Rufo, 502 U.S. at 393. Of the three exhibits to the City's Response to the instant Motion, McCoy's affidavit provides the most support for equitable modification of the consent judgment. McCoy's affidavit states that, because of his position as the mayor for many years, McCoy is familiar with Mansfield's income and expenses, particularly the expenses associated with the City's compliance with the consent judgment thus far. See Record Document 52-2 at ¶¶ 3-4. The affidavit then states that, in McCoy's opinion, the cost of constructing all of the improvements in the compliance schedule would "make it very difficult for the City to keep ongoing essential government operations such as city administration, water, sewage, sanitation, and police protection fully funded." Id. at ¶ 6. The fact that compliance with a consent judgment in its current form imposes significant "financial constraints" on a government actor is one factor that may be taken into account in deciding whether to equitably modify the judgment. Rufo, 502 U.S. at 392-93. Though McCoy's affidavit is somewhat conclusory and provides little factual support for its conclusions, such as estimates of the cost of constructing the improvements required by the compliance schedule, the Court finds that it provides at least some evidence supporting equitable modification of the consent judgment. See Record Document 52-2.

The City's other two exhibits also contain some evidence in favor of equitably modifying the consent judgment, as do two of the photographs Plaintiffs submitted with

the instant Motion. Ruffin's affidavit and the City's photographs demonstrate that at least some of the work required by the consent judgment has been performed, particularly improvement of the following sidewalks and curb ramps: (1) all of the sidewalks and curb ramps surrounding the DeSoto Parish Courthouse (i.e., portions of the sidewalks along Washington Ave. and Texas, Franklin, and Adams Streets); (2) the curb ramps at all four corners of the intersection of Washington Ave. and Polk St.; (3) the curb ramps at two of the corners of the intersection of Franklin St. and Washington Ave.; (4) the curb ramps at the corners of the intersection of Polk St. and Adams St.; and (5) some of the sidewalks on Crosby St. between Gibbs St. and Polk St. See Record Document 52-2 at 2, ¶ 13, and 4-8.[2]

Two of the photographs Plaintiffs submitted also confirm that the City has performed at least some of the work required by the compliance schedule. One of the photographs shows a ramp that appears to have been recently constructed in an attempt to comply with the ADAAG's specifications, though Plaintiffs nonetheless contend that the ramp in question does not comply with these specifications. See Record Document 48-4

---

[2] Ruffin's affidavit appears to have been primarily aimed at establishing that many of the sidewalks in Mansfield have not been altered since 1992. See Record Document 52-1 at 1-3. That fact is important to determine compliance with the ADA under normal circumstances, but as discussed in Section II, A and B, *supra*, the consent judgment requires the City to make more improvements than would ordinarily be required absent such a judgment. Thus, Ruffin's statements regarding the fact that no substantial work has been done to many sidewalks in Mansfield since 1992 actually hurts the City's case for equitable modification of the consent judgment to the extent that some of the sidewalks which Ruffin states have not been altered since 1992 are the sidewalks that were required to be altered under the consent judgment. Additionally, Ruffin's affidavit refers to the construction of several ADA-compliant sidewalks along Oxford Rd. and Louise St. in Mansfield. See id. at ¶¶ 18-19. Construction of ADA-compliant sidewalks on those streets is not of great importance to the instant action because construction of ADA-compliant sidewalks on those streets is not required in the consent judgment. See Record Document 48-2.

at 4 (IMG_1276). A second photograph shows another apparently recently constructed curb ramp at the south side of the intersection of Crosby St. and Polk St., which Plaintiffs themselves labeled as "appropriately ramped." See id. at 6 (IMG_1232). Whether the City has acted in good faith is a factor to be considered in deciding whether to equitably modify the consent judgment. See Small, 98 F.3d at 796. The fact that the City has made at least some of the improvements required by the consent judgment provides some evidence that the City has acted in good faith in attempting to comply with the consent judgment.

Though the City has provided some evidence that could support equitable modification of the consent judgment, the Court finds that the evidence submitted thus far is not enough to justify equitably modifying the contract to relieve the City of some of the burdens of the consent judgment. Both parties should have the opportunity to present more evidence on this important question, as the briefing and evidence on the instant Motion was primarily focused upon the interpretation of the consent judgment. Accordingly, the Court will set a status conference by subsequent minute entry at which the Court will discuss and set a hearing on this issue.

Under Rufo, which provides the "flexible standard" for equitable modification of consent judgments, the City's burden at this hearing will be to establish that "a significant change in circumstances [since the parties entered into the consent judgment] warrants revision of the decree." 502 U.S. at 383 and 393. Equitable modification may be appropriate under any of the following conditions: "(a) changed factual conditions make compliance with the decree substantially more onerous than was contemplated [at its inception]; (b) the decree proves to be unworkable because of unforeseen circumstances; or (c) enforcement of the decree without modification would be detrimental to the public

interest." Johnson v. Florida, 348 F.3d 1334, 1342 (11th Cir. 2003), citing Rufo, 502 U.S. at 384-85. Though there is no requirement that such changed circumstances be both "unforeseen and unforeseeable," equitable modification "should not ordinarily be granted where a party relies upon events that actually were anticipated" at the time the parties entered into the consent decree. Rufo, 502 U.S. at 383. Thus, the focus of the hearing will be on determining whether there have been unanticipated changes in circumstances in Mansfield since the parties entered the consent judgment in 2004.

As stated in Section II, C, *supra*, two of the factors in making this determination are whether compliance with the consent judgment would be a significant financial hardship on the City and whether the City has acted in good faith regarding the consent judgment thus far. Specific evidence regarding the following non-exclusive list of matters would also be relevant in determining whether to equitably modify the consent judgment:

1) The estimated cost of compliance with all of the requirements of the consent judgment from 2017 to 2025;

2) Any increases in the cost of compliance with the consent judgment since its inception in 2004 (i.e., inflation in the cost of constructing sidewalks and curb ramps, particularly any inflation in costs above inflation of costs in other areas);

3) The financial condition of the City of Mansfield since 2004, particularly any significant changes in the City's revenue or expenses;

4) Estimates regarding the financial condition of the City of Mansfield through the end of the compliance schedule's required improvements in 2025;

5) Population growth or decline in Mansfield since 2004 and whether the level of growth or decline in population was anticipated in 2004;

6) The extent to which the City has complied with the requirements of the compliance schedule through the end of 2016, such as a percentage of the work required by the compliance schedule that has actually been completed;

7) Any changes in the number of businesses open to the public and government offices adjacent to the streets on which sidewalk and curb ramp construction is required under the compliance schedule.

## CONCLUSION

The Court finds that the consent judgment in the instant action is unambiguous, and that Plaintiffs' interpretation of the consent judgment is correct. The evidence Plaintiffs submitted with the instant Motion seems to show that the City has not complied with at least some of the requirements of the consent judgment. However, the City has also presented at least some evidence that would support equitably modifying the consent judgment. Thus, a decision on the instant Motion is hereby **DEFERRED** until such time as the Court holds a hearing and issues a decision on the question of equitable modification of the consent judgment.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, on this the 17th day of May, 2017.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE